UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

    Plaintiff(s),

v.

MORGAN ACQUISITIONS, LLC and
MICHIGAN RV RESORT, LLC,

    Defendant(s).
_____/

Case No. 10-10965
Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER [4]**

This matter comes before the Court on Defendants' motion to dismiss for failure to state claims upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer. For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

**I.    Facts**

Signature Resorts of Michigan, Inc. (Signature) was the original developer of "The Motor Coach Resort at Bay Harbor Condominium" (Development), a motor coach resort located in Resort Township, Michigan. Sometime prior to 2008, Signature sought the approval of Resort Township for the construction of the Development which was granted with certain conditions. (Compl. ¶ 7.) One such condition was a requirement that Signature install screening improvements around the perimeter of the Development. (Compl. ¶ 8.) And, to ensure that such improvements were made, Resort Township required Signature

to provide it with a Subdivision Performance Bond for the estimated value of the perimeter screening improvements. (Compl. ¶ 9.)

On April 4, 2008, Plaintiff Travelers Casualty and Surety Company of America issued Subdivision Improvement Bond No. 104938549 (Bond) to Signature in the amount of $351,975 for the installation of the perimeter screening improvements. (Compl. ¶ 10; Pl.'s Resp., Ex. A.) The Bond named Signature as Principal, Plaintiff as Surety, and Resort Township as Obligee. According to the terms of the Bond, Plaintiff was obligated to complete the perimeter screening improvements if it was not completed by Signature on or before "August 1, 2008 (or within such further extensions of time that shall be granted by [Resort Township] in writing and consented to in writing by [Plaintiff])." (Compl. ¶¶ 12, 25; Pl.'s Resp., Ex. A.) Signature, however, did not complete the installation of the perimeter screening improvements by August 1, 2008. (Compl. ¶ 13.) In fact, Signature never completed the work. (Compl. ¶ 22.)

On March 5, 2009, Signature, along with other related entities (Debtors), filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware in an action entitled *In re: Monaco Coach Corp., et al.,* No. 09-10750. (Compl. ¶ 13.) On March 23, 2009, Plaintiff became a party to the bankruptcy proceeding when it, through its counsel, filed an appearance. (Defs.' Mot., Ex. 2.)

In order to reorganize, the Chapter 11 Debtors elected to sell some of its assets, including the Development. On April 24, 2009, the Debtors in the bankruptcy proceeding, including Signature, filed a motion (Sale Motion) for an order authorizing, *inter alia*, the sale of the Development free and clear of all liens, claims, encumbrances and interests pursuant to sections 363(a), (f) and (m) of the Bankruptcy Code. (Compl. ¶ 14.) Plaintiff was served

2

with notice of the Sale Motion that same day. (Defs.' Mot., Ex. 3.) On May 4, 2009, Plaintiff was served with: (1) Notice of Auction and Sale Hearing; and (2) Notice of Sale Procedures, Auction Date, and Sale Hearing.[1] (Defs.' Mot., Ex. 4.) These notices provided that:

> The Assets are being sold free and clear of all liens, claims, encumbrances and interests ...
>
> [T]he deadline for submitting bids ... shall be May 14, 2009 ...
>
> The Auction shall commence at 10:00am on May 21, 2009 ...
>
> [T]he Bankruptcy Court has scheduled a hearing for May 22, 2009 ... to consider approval of the winning bid(s) and confirm the Auction for the Assets, pursuant to ... the Sale Motion ...

(Defs.' Mot., Ex. 4 at 5-6.) Plaintiff was also provided with an opportunity to object or be heard regarding the requested relief and failed to do so.[2] (Defs.' Mot., Ex. 5 ¶ G.)

On May 11, 2009, the bankruptcy court issued an order granting the Sale Motion (Sale Order). (Compl. ¶ 15; Defs.' Mot., Ex. 5.) And, on June 1, 2009, the Debtors' assets, including the Development, were sold to Defendant Morgan Acquisitions, LLC (Morgan).

---

[1] In the Sale Order, the bankruptcy court found that "proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction and the Sale Hearing ha[d] been provided in accordance with [the] Bankruptcy Code ..., the local rules of [the] [c]ourt, the procedural due process requirements of the United States Constitution, and in compliance with the Sales Procedure Order." (Defs.' Mot., Ex. 5 ¶ F.)

[2] In the Sale Order, the bankruptcy court found that "[a] reasonable opportunity to object or be heard regarding the requested relief [was] afforded to all interested persons and entities, including, without limitation ... (i) all ... parties that have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 case." (Defs.' Mot., Ex. 5 ¶ G.)

According to Plaintiff, it "opted not to submit a response recognizing that, based upon the clear language of the proposed Sale Order, any eventual purchaser would be obligated to complete the, as yet, uncompleted governmentally mandated work." (Pl.'s Resp. at 12.)

(Compl. ¶¶ 16, 19-20.) On that same day, Morgan transferred title of the Development to Defendant Michigan RV Resort, LLC (Michigan RV). (Compl. ¶ 20.)

Between the approximate dates of[3] May 11, 2009—the date the bankruptcy court issued the Sale Order—and June 1, 2009—the date that title to the Development was transferred to Defendants—Resort Township contacted Plaintiff "demanding the completion of the ... perimeter screening improvements." (Compl. ¶ 21.) Plaintiff contacted Signature and was informed that Signature would not be completing the improvements that were secured by the Bond. (Compl. ¶ 22.) After the sale of the Development was finalized, Plaintiff then contacted Defendants and demanded that they install the perimeter screening improvements. (Compl. ¶ 23.) Defendants also refused. (Compl. ¶ 24.)

During this same time period, Plaintiff received a quotation from Vidosh Site Work (Vidosh)—Signature's original contractor—to complete the work. (Compl. ¶ 26.) Vidosh's quotation, dated May 29, 2009, entitled "Perimeter screening Bond ... Phase II" was in the amount of $163,754.46. (Compl. ¶ 27; Pl.'s Resp., Ex. 3.) Plaintiff also requested Vidosh to provide a quotation to replace some of the perimeter screening improvements that had been installed during the summer of 2008, as part of Phase I. (Compl. ¶ 27.) Vidosh's quotation, dated September 11, 2009, entitled "Perimeter screening Phase One-Replacement" was in the amount of $9,345.24. (Compl. ¶ 27; Pl.'s Resp., Ex. 4.) Plaintiff submitted both Vidosh quotations to Defendants attempting to acquire an agreement

---

[3] The Complaint states: "[a]t the same time as the asset sale took place ...", (Compl. ¶ 21), and Plaintiff response states: "[s]ubsequent to the Bankruptcy Court's approval of the Sale Order, Resort Township continued to enforce the requirements it had imposed as a condition of the approval of the Development," (Pl.'s Resp. at 9).

4

whereby Defendants would assume responsibility to complete the perimeter screening improvement secured by the Bond. Again, Defendants refused. (Compl. ¶ 28.)

According to Plaintiff, its obligation to complete the perimeter screening improvements "arose as a result of ... [the] Bond ... The filing of the Chapter 11 Bankruptcy Action terminated the liability of Signature ..., however, it did not impact the liability of [Plaintiff] under the terms of the Bond to [Resort] Township." (Pl.'s Resp. at 9.) Accordingly, on October 16, 2009, Plaintiff accepted Vidosh's quotations for the replacement of the Phase I improvements and for the completion of the Phase II improvements. (Compl. ¶ 29; Compl., Ex. A; Pl.'s Resp., Exs. 3-4.)

Vidosh performed the work to the approval of Plaintiff and Resort Township. (Compl. ¶ 30.) Plaintiff subsequently approved Vidosh's invoices and remitted payment in the amount of $173,099.70. (Compl. ¶¶ 31-32; Compl., Ex. B; Pl.'s Resp., Ex. D.) Plaintiff thereafter received a partial release from Resort Township reducing the penal sum of the Bond from $351,975.00 to $178,875.53. (Compl. ¶ 33; Pl.'s Resp., Ex. A.) The release provided:

> Whereas, on April 4, 2008, [Plaintiff] issued Bond No. 104938549 ... as Surety with Signature ... as Principal ... and Resort Township ... as Obligee; and whereas Principal has defaulted in performing the obligation called for by the Bond ... and Principal's default has been declared by [Resort] Township and [Resort] Township has requested that [Plaintiff] complete the Work ...

(Pl.'s Resp., Ex. E.) The release also included an assignment under which Resort Township agreed to

> transfer, assign and set over to [Plaintiff] all of its claims and rights against Principal and Principal's ... successors and assigns and ... Morgan Management Company ... and Morgan's affiliates, subsidiaries, successors and assigns ...

(*Id.*)

Plaintiff, as the purported subrogee/assignee of Resort Township, commenced this action to enforce Defendants' alleged prior and future obligations pursuant to Resort Township's demand that the perimeter screening improvements, which performance was secured by the Bond, be completed.[4]

This matter is before the Court on Defendants' motion to dismiss for failure to state claims upon which relief can be granted or, in the alternative, to transfer. Because it is evaluating a Rule 12(b)(6) motion, the Court views the allegations in Plaintiff's Complaint in the light most favorable to it and assumes that all allegations are true.

## II. Rule 12(b)(6) Motion to Dismiss Standard[5]

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states

---

[4] Specifically, Plaintiff contends that it "commenced the instant action against Defendant[s] ... in order to enforce the Defendant[s'] ... obligations to Resort Township under the applicable building codes, zoning ordinances and pursuant to the approvals granted by Resort Township as a condition of approval of the construction of the Resort." (Pl.'s Resp. at 20.)

[5] Defendants bring its motions pursuant to Federal Rule of Civil Procedure 12(b)(6), although both parties rely on documents referred to in the Complaint. A Rule 12(b)(6) analysis generally forbids a court from considering documents outside the pleadings, *Gunasekera v. Irwin*, 551 F.3d 461, 469 n.4 (6th Cir. 2009); however, when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss." *Greenberg v. Life Insurance Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James Wm. Moore *et al.*, Moore's Federal Practice § 56.30[4] (3d ed. 1998)) (internal quotations omitted). In addition, a court may also consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Zibbell v. Michigan Dept. of Human Services*, 313 Fed. App'x 843, 846 (6th Cir. 2009).

6

a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted). Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement

to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

## III. Analysis

Defendants request dismissal of the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's claims are precluded by a final judgment entered in *In re: Monaco Coach Corp., et al.*, No. 09-10750 (Bankr. D. Del. 2009). As an alternative to dismissal, Defendants request that the action be transferred to the United States Bankruptcy Court for the District of Delaware which, under an express provision of its prior judgment, retained jurisdiction of the disputes alleged in this action.

### A. Claims Precluded by a Final Judgment

Defendants argue that Plaintiff's claims are precluded by the final judgment entered in *In re: Monaco Coach Corp., et al.*, No. 09-10750 (Bankr. D. Del. 2009). Specifically, Defendants contend that the Sale Order expressly provides that the subsequent purchase of the Development was "free and clear of any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal or first offer, easement, servitude, restrictive covenant, encroachment, hypothecation, debt, levy, indenture, proxy, voting trust or agreement, transfer restriction or encumbrance of any similar restriction of any kind (other than the Permitted Exceptions ...)." (Compl. ¶ 17; Defs.' Mot., Ex. 5 ¶ Q; *see also* Defs.' Mot., Ex. 5 ¶¶ M, Q, R-S, V, Z, 3-4, 6, 11, 13-14, 17, 22-25, 28-29, 32-33.) Defendants argue that Plaintiff's claims are precluded by this unambiguous language and should, therefore, be dismissed.

8

Plaintiff, on the other hand, contends that "this action represents the separate enforcement of a governmental obligation held by Defendant[s] ..., the separate enforcement of which was expressly permitted by the Sale Order." (Pl.'s Resp. at 16.) Plaintiff, accordingly, claims that one of the "Permitted Exceptions" enumerated in the Sale Order is relevant here—Paragraph 25.

> Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the *enforcement of any liability to a governmental unit under police and regulatory statutes or regulations* that (a) the Buyer would be subject to as the owner or operator of the ... [Development] Assets *after the date of entry of this Order* or (b) any entity other than the Buyer would be subject to as the owner or operator of property after the date of entry of this Order.

(Defs.' Mot., Ex. 5 ¶ 25 (emphasis added).) Plaintiff argues that Resort Township's demand, that the perimeter screening improvements be completed, was an "enforcement of [a] liability to a governmental unit." (Defs.' Mot., Ex. 5 ¶ 25.) Plaintiff concludes that—because it satisfied a liability to a governmental unit—it became subrogated to the rights of Resort Township through the partial release and assignment executed in its favor. (Pl.'s Resp., Ex. E.)

> As a direct result of the issued Partial Release and Assignment and the Doctrine fo Equitable Subrogation, Resort Township's claims against Defendants ..., as the successor owners of the ... [Development], have been legally and equitably transferred to [Plaintiff].

(Pl.'s Resp. at 15.) Thus,

> [Plaintiff] as the assignee/subrogee of Resort Township, Michigan is simply seeking the issuance of an order by this Court enforcing an obligation of the Defendant[s] ..., which was assumed by the Defendant[s] ... and the separate enforcement of which was specifically contemplated by the Sale Order and accepted by the Defendant[s] ...

9

> In accordance with the Assignment and the rights of equitable subrogation, [Plaintiff] has stepped into the Township's position and received the right to enforce the Township's conditions ...
>
> [Plaintiff] is not attempting to invalidate or attack the May 11, 2009 Order. Instead, it is simply seeking as the subrogee/assignee of Resort Township to enforce Defendant[s'] ... obligation to complete the governmentally mandated improvements to the [Development].

(Pl.'s Resp. at 17-18.) This Court, however, rejects Plaintiff's argument. Paragraph 25 of the Sale Order has no application here: Resort Township's demand and Plaintiff's performance in satisfaction of the Bond it issued to Signature is simply not an "enforcement of [a] liability to a governmental unit under police and regulatory statutes or regulations" that arose "after the date of entry of th[e Sale] Order" as excepted in Paragraph 25 of the Sale Order. (Pl.'s Resp., Ex. A ¶ 25.)

First, any liability running to Resort Township, as a governmental unit, was satisfied when Signature secured the Bond from Plaintiff. The Bond, on its face, created a contractual relationship between Signature as Principal, Plaintiff as Surety, and Resort Township as Obligee. (*See* Pl.'s Resp., Ex. A.) And, as surety, Plaintiff "accepted a direct obligation to Resort Township to fulfill [Signature's] *contractual* commitment to install perimeter screening in return for site approval." (Defs.' Reply at 1 (emphasis in original).) The fact that Signature defaulted on the Bond and the fact that Resort Township demanded Plaintiff's performance on the bond it had previously issued, does not create a liability on Defendants part to Resort Township—it merely enforces the prior obligations due under the Bond to secure Signature's performance and insure against Signature's default. Thus,

Plaintiff's recourse was solely against Signature[6] and its current attempt to transfer liability to Defendants—buyers who acquired the property free and clear of all liens—is without merit.

Second, Plaintiff has not specified any statute or regulation that Resort Township is attempting to allegedly enforce.[7] Plaintiff "only refers to a commitment made by [Signature] and leaves the Court to assume that Defendants are in violation of a governmental statute" or regulation.[8] (Defs.' Reply at 3.)

Third, there is no allegation in the Complaint, nor Plaintiff's response to Defendants' motion, that a liability arose "after the date of entry of th[e Sale] Order." (Pl.'s Resp., Ex. A ¶ 25.) In fact, Plaintiff's obligation under the Bond to complete the perimeter screening improvements, should Signature default, ripened prior to the transfer of ownership to Defendants. Between the approximate dates of May 11, 2009 and June 1, 2009, Resort Township contacted Plaintiff and demanded that it complete the perimeter screening

---

[6] Signature did not file for bankruptcy protection until March 5, 2009. Plaintiff could have pursued Signature in the seven months prior to the bankruptcy filing as Signature did not complete the perimeter screening improvements before August 1, 2008—the date contemplated in the Bond. Plaintiff also could have filed a creditor's claim in the bankruptcy proceeding itself. It did neither.

[7] Plaintiff, in its response to Defendants' motion claims that this action is, "in essence," an enforcement of a "simple citation for violation of the building codes." (Pl.'s Resp. at 18.)

[8] Plaintiff erroneously contends that "Paragraph 25 sells the resort property subject to the performance by [Defendants] or its successors of *all obligations and liabilities* owed to applicable governmental units relative to those assets sold in the course of the Chapter 11 bankruptcy." (Pl.'s Resp. at 18 (emphasis added).) To the contrary, paragraph 25 of the Sale Order is limited and by its unambiguous language only applies to the "enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that ... the Buyer would be subject to as the owner or operator of the ... [Development] after the date of entry of th[e] [Sale] Order " and, as discussed, does not except out the obligations and liabilities at issue here.

11

improvements secured by the Bond. Plaintiff, in turn, demanded that Signature complete such work. And, after Signature refused, Plaintiff requested and received a quotation from Vidosh dated May 29, 2009 to complete a substantial part of that work. Thus, prior to June 1, 2009—the date the ownership of the Development transferred to Defendants—Plaintiff's obligation to complete the work secured by the Bond had ripened. Simply because Plaintiff waited until after the Development had transferred to Defendants' ownership to complete the work does not change the fact that Plaintiff's responsibility to complete the work, per the express terms of the Bond, had matured; nor does it place any subsequent obligation on Defendants to perform such work.

Finally, Resort Township's claims have not been asserted against Defendants, rather it claims were asserted against Signature and against the Bond that secured Signature's performance.

Defendants argue that—because Plaintiff's argument for liability directly contradicts the unambiguous language in the Sale Order which demonstrates that Defendants acquired the Development free and clear of all liens, claims and encumbrances—Plaintiff's claims should be dismissed: (1) as an impermissible collateral attack on the bankruptcy court's Sale Order; and (2) under the doctrine of res judicata. This Court agrees and discusses each in turn.[9]

### 1. Impermissible Collateral Attack

A "collateral attack" is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court. *Pratt v. Ventas, Inc.*, 365 F.3d

---

[9] Because the Court is granting Defendants' motion to dismiss, it need not address its arguments in favor of transfer.

514, 519 (6th Cir. 2004). The doctrine precludes litigants from collaterally attacking the judgments of other courts. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("We have made clear that [i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected.") (internal quotations omitted).

> The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing.

*Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251, 1255 (4th Cir. 1997) (citing *Celotex*, 514 U.S. at 305-07). Thus, a collateral attack is any proceeding in which the integrity of a judgment is challenged, except for a challenge made in the action in which the judgment is rendered, or by appeal.

This action is an impermissible collateral attack on the bankruptcy court's Sale Order. The bankruptcy court issued the Sale Order providing for the sale of the Development "free and clear of any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal or first offer, easement, servitude, restrictive covenant, encroachment, hypothecation, debt, levy, indenture, proxy, voting trust or agreement, transfer restriction or encumbrance of any similar restriction of any kind." (Compl. ¶ 17; Defs.' Mot., Ex. 5 ¶ Q.) Plaintiff was a party to the bankruptcy proceeding, had notice of the Sale Motion and failed to object. *See Spartan Mills*, 112 F.3d at 1255-57 ("[The plaintiff] had notice of these orders but failed to object to or appeal them. ... If the

13

bankruptcy court had jurisdiction to enter these orders, under *Celotex* we must consider them binding on [the plaintiff], even if they were in error, and therefore must reject this collateral attack ... [The plaintiff] cannot allow a final order that deprives it of a lien position to stand and then hope to attack it collaterally at another time and in another forum. Both our circuit and other federal courts have barred bankruptcy parties from collateral assertions of legal claims after they fail, without reason, to object and appeal as required."). And, as discussed above, Plaintiff's reliance on the exception contained in paragraph 25 of the Sale Order is misplaced. Because Plaintiff does not contest the bankruptcy court's jurisdiction, its attempt to collaterally attack the Sale Order is rejected. *See Celotex*, 514 U.S. at 313 (holding that a collateral attack on a bankruptcy order cannot be permitted "without seriously undercutting the orderly process of the law").

### 2. Claims Barred by Res Judicata

Courts apply the doctrine of res judicata to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources. *See Federated Department Stores v. Moitie*, 452 U.S. 394 (1981). Res judicata should not be confused with the collateral attack doctrine.

> The two doctrines are interrelated and sometimes confused, but they are not interchangeable. Res judicata refers to the effect of an earlier ruling on a subsequent action. Collateral attack refers to the method of attempting to circumvent an earlier ruling by filing a subsequent action.

*Pratt v. Ventas, Inc.*, 273 B.R. 108, 114 (W.D. Ky. 2002). Res judicata acts to bar claims by according preclusive effect to a prior judgment where four elements are present:

> 1. A final decision on the merits in the first action by a court of competent jurisdiction;
> 2. The second action involves the same parties, or their privies, as the first;

> 3. The second action raises an issue actually litigated or which should have been litigated in the first action; [and]
> 4. An identity of the causes of action.

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). These elements are present here and Plaintiff's claims are, therefore, barred by the doctrine of res judicata.

On May 11, 2009, the bankruptcy court issued the Sale Order, which authorized the sale of the Chapter 11 Debtors' assets, including the Development. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) ("We join other circuits in holding that a bankruptcy court's sale order is a final order for res judicata purposes, not only because it is in line with our holdings that an order confirming a reorganization is a final order, but also because it is in line with the policy behind res judicata."). Because a bankruptcy court's Sale Order is a final order for res judicata purposes, the first element of res judicata is met here.

The second element is also met here, as there is subsequent action between the same parties or those in privity with the parties to the original action. In the present case, the original action was the bankruptcy proceeding. Among the parties to that proceeding—as identified in the Sale Order—was, Defendants' assignor, Signature. Plaintiff was also a party to that action, when—on March 23, 2009—it filed an appearance. Plaintiff does not contest that the parties here were parties to the bankruptcy proceedings. *See Winget*, 537 F.3d at 579.

The third element of res judicata is satisfied because Plaintiff could have, and should have, brought its action during the bankruptcy proceeding as it was related to that proceeding. "[C]laims are considered related to a bankruptcy proceeding if the outcome of

15

that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Stated another way, a claim is 'related to' the bankruptcy proceeding if it would have affected the debtor's rights or liabilities." *Winget*, 537 F.3d at 579 (internal quotations and citations omitted). Plaintiff's obligation under the Bond—to complete the perimeter screening improvements, should Signature default—and its claims against Signature arose prior to the transfer of ownership of the Development to Defendants. Because Plaintiff's claims attack Signature's pre-bankruptcy actions, those claims "would have affected the debtor's rights or liabilities" in the bankruptcy proceeding. Plaintiff received notice of the Sale Motion and Sale Order, and could have, and should have, objected during the bankruptcy proceeding. *See Winget*, 537 F.3d at 579-80. Moreover, the Sale Order expressly prohibits this type of attack.

> [A]ny creditors asserting or holding a Lien, Claim, encumbrance or Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the ... Resort ... shall be forever barred, stopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, encumbrance or Interest ... directly or indirectly, against the Buyer or any affiliate, successor or assign ...

(Defs.' Mot., Ex. 5 ¶ 24.) Thus, Plaintiff's sole opportunity to pursue its claims was during the bankruptcy proceeding.[10]

---

[10] Although Plaintiff "acknowledges that its claims against Defendant Purchasers would be barred pursuant to the doctrine of res judicata if it was seeking to enforce its claim against Signature Resorts or its related entities pursuant to the Bond," it claims that such is not the situation currently before this Court. Rather, in the instant situation [Plaintiff], as the assignee/subrogee of Resort Township is seeking enforcement of the Townships' mandate against the Owners of the Development, Defendant[s] ..., and it is seeking remedies for the monetary damages it incurred completing the Township's mandates for Phases 1 and 2 of the Development. As such, [Plaintiffs]' claims against Defendant[s] ... are both valid and enforceable pursuant to both the doctrine of equitable subrogation and the doctrine of assignment ...

16

The final element of res judicata is also satisfied here. This element "requires that there be an 'identity of claims,' which is satisfied if the claims arose out of the same transaction or series of transactions, or if the claims arose out of the same core of operative facts." *Winget*, 537 F.3d at 580 (internal quotations and citations omitted). The claim before this Court arises out of the same claim that was at issue in the Sale Motion and Sale Order: the Debtors' request to permit the sale of its assets, including the Development, free and clear of all claims, including Plaintiff's. *Winget*, 537 F.3d at 581 ("Looking at the Complaint, it is clear that the factual allegations contained therein pertain not just to the Sale Order, but to the larger transactions and facts of [the plaintiff] and the Defendants' continuous dealings. These were the same transactions and facts on which [the plaintiff] based its objection to the Sale Order. The transactions and facts that form the basis for [the plaintiff's] allegations are the same transactions and facts that led to the Bankruptcy Proceeding. As such, [the plaintiff's] argument fails and the fourth, and final, element of res judicata is met here.").

---

> Thus, [Plaintiff] claims, as assignee/subrogee of Resort Township, against Defendant[s] ... could not and were not required to be litigated in the Chapter 11 bankruptcy of Signature Resorts and its related entities. The claims in question were not ripe at that time and such claims were protected by the very clear specifications contained in Paragraph 25 of the Sale Order.

(Pl.'s Resp. at 20-22.)

Notwithstanding paragraph 22 of the Sale Order, the Court is not persuaded by Plaintiff's argument that res judicata does not apply because it is pursuing this action as subrogee. The partial release and assignment demonstrates that Plaintiff fulfilled, in part, its obligation to Resort Township under the Bond and that Resort Township provided Plaintiff with an assignment of claims against Signature, its "successors and assigns and ... Morgan Management Company ... and Morgan's affiliates, subsidiaries, successors and assigns ..." Although Morgan Management Company is not a party to this action, Resort Township has no claim against Morgan Management Company. As discussed above, Signature made a contractual commitment to Resort Township which was secured by Plaintiff's Bond.

17

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is hereby GRANTED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: June 14, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 14, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager